IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'24 JAN 11 AM 10:23

| | |
|---|---|
| NOLAN KINARD FLOYD, SR., | |
| Plaintiff, | |
| v. | Civil Action No. 1:23-cv-481-LKG |
| CAPTAIN HOKE, | Dated: January 10, 2024 |
| Defendant. | |

## MEMORANDUM OPINION

Pending in this civil rights case is Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment. ECF No. 21. Plaintiff was advised of his right to file an opposition response and of the consequences of failing to do so but has not opposed the motion. ECF No. 22. No hearing is required. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated below, the unopposed motion, construed as a Motion to Dismiss, shall be **GRANTED** and the complaint dismissed without prejudice for failure to exhaust administrative remedies.

**I.  Background**

Self-represented Plaintiff Nolan Kinard Floyd, Sr. is an inmate who is currently confined at North Branch Correctional Institution ("NBCI") and was formerly confined to Maryland Reception Diagnostic Classification Center ("MRDCC") as a pre-trial detainee. Floyd alleges that he was transferred from Jessup Correctional Institution ("JCI") to MRDCC after he assaulted a staff member at JCI. ECF No. 1 at 2, ¶ 6. Floyd explains that he remained at MRDCC from 2020 to 2021. *Id*.

Floyd complains generally that his constitutional rights were violated at MRDCC when forms for use in filing a grievance under the Administrative Remedy Procedure ("ARP") were not

made available to him on his housing unit after he asked correctional employees for the forms. ECF No. 1 at 2-3, ¶¶ 7, 8. Floyd also believed that his mail was not being sent out of MRDCC and requested to speak with Defendant Captain Hoke about the matter. *Id*. at 3, ¶ 9. When Captain Hoke came to Floyd's housing unit (7-B), Floyd gave her over 90 letters and complaints that were addressed to the Inmate Grievance Office ("IGO"). *Id*. Floyd alleges that Captain Hoke never mailed the letters while Captain Hoke states that she did mail "each and every complaint to the IGO." *Id*. at ¶ 10. Floyd bases his belief on the fact that he never received a response to his complaints. *Id*.

In a supplement to his complaint, Floyd alleges that upon his transfer to MRDCC he was placed in a cell on the seventh floor, B tier, Cell 10. ECF No. 5 at 1. He states he remained in that cell from December 28, 2019, until July 15, 2021, in "solitary confinement." *Id*. Floyd claims that he "filed grievance 180-1 forms to try and solve many of the problems [he] was having within the prison." *Id*. He states that the "issues were never addressed" which indicated to him that none of the officers cared about his rights. *Id*. at 2.

Floyd claims that Captain Hoke did rounds on his housing unit approximately three times a week and whenever he saw her, he would give her complaints to mail for him. ECF No. 5 at 3. When Captain Hoke did not come to the tier, Floyd would give his mail to other officers to take to Captain Hoke for mailing. *Id*. Among the officers Floyd claims he gave his complaints to were Officers Gregory, Joseph, and Wilson. *Id*. All of the envelopes were addressed to the IGO. *Id*. When Floyd was transferred from MRDCC to Western Correctional Institution ("WCI") he contacted the IGO to inquire about his complaints. *Id*. To his chagrin, he was informed that he had no pending complaints at the IGO. *Id*. He states that he was "devastated." *Id*.

Floyd concludes that his First and Fourth Amendment rights were violated when his mail was not sent out and was opened without his consent. ECF No. 5 at 4. Floyd adds that MRDCC staff opened his complaints, which were about those employees, and read them. *Id*. In addition, he claims that his "food was played with, family members contacted and played with, money was stolen, visits were refused, and [he] was given a bad COVID shot that made him sick and hernia erupt [sic]." *Id*.

As relief, Floyd seeks a declaratory judgment stating that his First, Fourth, Fourteenth, and Eighth Amendment rights were violated. ECF No. 1 at 4. Additionally, he seeks monetary damages. *Id*.

Defendant Captain Hoke asserts that Floyd's complaint is subject to dismissal because he failed to exhaust administrative remedies, that she is entitled to Eleventh Amendment immunity for the claims against her in her official capacity, and that she is entitled to qualified immunity because there is no viable claim stated in the complaint. ECF No. 21.

In connection with the claim that Floyd failed to exhaust administrative remedies, Hoke provides the declaration of F. Todd Taylor, the Director of the IGO. In it he states that the IGO received several complaints from Floyd all of which were dismissed. Specifically, Taylor explains that the IGO received a grievance from Floyd on May 21, 2021, which was an appeal from the disposition of a disciplinary proceeding held on March 24, 2021. ECF No. 21-3 at 2, ¶ 5. The grievance (IGO No. 2021-0373) was dismissed on August 25, 2021, because the IGO did not have jurisdiction since Floyd was a pre-trial detainee at that time. *Id*.

On August 23, 2021, the IGO received another grievance from Floyd regarding harassment by Correctional Officer Barnes. ECF No. 21-3 at 3, ¶ 6. This grievance (IGO No. 2021-0896)

3

was dismissed on September 9, 2021, because Floyd did not provide the IGO with copies of the related ARPs. *Id.*

Also, on August 23, 2021, the IGO received Floyd's grievance regarding breakfast for inmates on Housing Unit 4, C Tier being served cold. ECF No. 21-3 at 3, ¶ 7. The grievance (IGO No. 2021-0876) was dismissed on September 22, 2021, because Floyd did not provide the IGO with copies of the related ARPs. *Id.*

On August 26, 2021, the IGO received a grievance (IGO No. 2021-0921) from Floyd complaining he was denied confidential access to his attorney to prepare for his defense. ECF No. 21-3 at 3-4, ¶ 8. Because Floyd did not provide copies of the related ARPs and because he did not provide any facts to substantiate his claim that his access to his attorney was compromised because the phone calls were recorded, this grievance was dismissed on September 9, 2021. *Id.* at 4, ¶ 8.

On September 8, 2021, Floyd's grievance (2021-0955) complaining that his property had been confiscated while he was housed at MRDCC in February of that year was received by the IGO. ECF No. 21-3 at 4, ¶ 9. This grievance was dismissed for failure to properly exhaust administrative remedies through the ARP process. *Id.*

On October 5, 2021, Floyd filed a grievance with the IGO complaining that he was a pre-trial detainee confined at WCI, and that he submitted three sick call slips without response. ECF No. 21-3 at 4-5, ¶ 10. This grievance (IGO No. 2021-1084) was dismissed because Floyd was a pre-trial detainee and because the IGO cannot grant relief on a complaint regarding medical providers. *Id.*

Nothing further was received from Floyd. ECF No. 21-3 at 5, ¶ 11.

**II.     Standard of Review**

4

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918

F.3d 312, 317-18 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys., LLC*, 959 F.3d 605, 616

6

(4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.,* 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.,* 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert,* 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.,* 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines,* 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union,* 891 F.3d 508, 512 (4th Cir. 2018); *Anand*

*v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id*. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id*.

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Because Floyd is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord. Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### III. Analysis

Failure to exhaust administrative remedies is an affirmative defense. If Floyd's claims have not been properly presented through the administrative remedy procedure it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes,

9

and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 578 U.S. at 639 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the

action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

In Maryland prisons, the Administrative Remedy Procedure is the administrative process that must be exhausted. Md. Code Regs. § 12.02.28.02(B)(1), (D) (2018). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. Md. Code Regs. § 12.02.28.05(D)(1) (requiring filing with the "managing official"); Md. Code Regs. § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); Md. Code Regs. § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. Md. Code Regs. § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210; Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d at 725 (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal

11

prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

The declaration of F. Todd Taylor, Jr. is undisputed and the complaint, in its entirety, concerns access to the administrative remedy process and is thus central to Floyd's claims. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (stating that "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed") (citations omitted). Where, as here, a prisoner plaintiff fails to exhaust administrative remedies, the complaint must be dismissed without prejudice.

To be clear, however, Floyd's complaint is so generalized and conclusory that his claims would not otherwise survive scrutiny under Rule 12(b)6) even if he had exhausted administrative remedies. For example, his claim that his First Amendment rights were violated provides no details as to *how* they were violated. To the extent Floyd intended to raise an access to courts claim, he fails to allege an actual injury. *See Lewis v. Casey*, 18 U.S. 343, 355 (1996) (requiring actual injury to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."). With respect to his Eighth and Fourteenth Amendment claims, he has failed to describe any conditions or other actions by Captain Hoke that amounts to cruel

and unusual punishment of a convicted prisoner or punishment of a pre-trial detainee. Lastly, his speculation that prison officials opened his mail without his permission in violation of his Fourth Amendment rights does not include any mention of Captain Hoke's alleged participation in such a practice, does not describe the type of mail that was opened, and, again, does not include a description of an actual injury. "Because there is a substantial governmental interest in censoring certain materials from an inmate's outgoing mail, e.g., materials detrimental to the security, good order, and discipline of the institution, or dangerous to the public, there is *a fortiori* a legitimate penological interest in opening and inspecting an inmate's outgoing mail for such material." *Altizer v. Deeds*, 191 F.3d 540, 549 (4th Cir. 1999). In short, the complaint is insufficient and, had Floyd exhausted administrative remedies, it would be dismissed for failure to state a claim.[1]

By separate Order which follows, the complaint shall be dismissed without prejudice.

1-10-2024
Date

LYDIA KAY GRIGGSBY
United States District Judge

---

[1] Because the complaint is dismissed without prejudice for failure to exhaust administrative remedies, Defendant's immunity defenses will not be addressed.